IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PATRICIA SMITH,                      )
                                     )
            Plaintiff,               )
                                     )
      v.                             )      1:20-CV-52
                                     )
UNC HEALTH CARE SYSTEM,              )
                                     )
            Defendant.               )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Patricia Smith, has sued the University of North Carolina Health Care System, contending UNC Health Care has violated the Family Medical Leave Act and discriminated against her based on race in violation of Title VII. Having removed the case from state court, UNC/HCS moves to dismiss on alternative grounds of insufficient process, sovereign immunity, and, as to the Title VII claim, failure to state a claim. Service of process was sufficient, and her claims are not barred by sovereign immunity. But Ms. Smith has failed to state a Title VII claim.

**Background**

Ms. Smith began working for UNC/HCS in April 2010. Doc. 3 at ¶ 6. She took a leave of absence under the FMLA from late November 2018 through on or about January 28, 2019. *Id.* at ¶ 14. In March 2019, she filed a charge of discrimination with the EEOC. *Id.* at ¶ 52. Ms. Smith received a "Right-to-Sue" letter from the EEOC on or around July 25, 2019. *Id.* at ¶ 54. After she was terminated, she filed suit, asserting two

causes of action: first, that UNC/HCS engaged in discriminatory and retaliatory conduct in violation of Title VII, *id.* at ¶¶ 55–61; and second, that UNC/HCS violated the FMLA by retaliating against her because she took FMLA leave. *Id.* at ¶¶ 67–74.[1]

After removing the case to this court, UNC/HCS filed this motion to dismiss, making several arguments pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See* Doc. 14 (citing Fed. R. Civ. P. 12(b)(1), (2), (4), & (6)). First, UNC/HCS contends that dismissal is appropriate pursuant to Rule 12(b)(4) because the summons served with the complaint had expired and therefore process was insufficient.[2] Second, UNC/HCS contends that it is entitled to sovereign immunity on all of Ms. Smith's claims and that dismissal is appropriate under Rules 12(b)(1), (2), and (6). Third, UNC/HCS contends that the Title VII claim fails to state a claim on which relief may be granted.

The facts and allegations relevant to each argument are set forth as they become relevant.

## Discussion

### I. Process was Sufficient under North Carolina Law

In cases removed from state court, "state law governs the sufficiency and service of process before removal." *Eccles v. Nat'l Semiconductor Corp.*, 10 F. Supp. 2d 514,

---

[1] Ms. Smith asserted a third claim in her complaint for wrongful termination in violation of N.C. Gen. Stat. § 143-422.2, Doc. 3 at ¶¶ 62–66, but she has not briefed that issue and has requested that the Court dismiss that claim without prejudice. Doc. 17 at 14 n.2.

[2] Initially, UNC relied on Rule 12(b)(4), but in its reply brief, it expanded the basis for dismissal to include Rules (b)(1) and (b)(2). Its argument remained the same: no valid summons was served after the complaint was filed.

2

519 (D. Md. 1998); *see* Fed. R. Civ. P. 81(c)(1). Under North Carolina law, civil actions may be commenced by (1) the filing of a complaint; or (2) by the issuance of a summons alongside an order extending time to file the complaint. N.C. R. Civ. P. 3; *see Stinchcomb v. Presbyterian Med. Care Corp.*, 211 N.C. App. 556, 561–62, 710 S.E.2d 320, 324–25 (2011). North Carolina Rule of Civil Procedure 4 governs service of process. *Harris v. Maready*, 311 N.C. 536, 541–42, 319 S.E.2d 912, 916 (1984).

Here, Ms. Smith commenced the civil action on October 23, 2019, under North Carolina Rule 3, when the state court entered an order granting her application for an extension of time to file her complaint and the clerk issued a summons pursuant to that order. Doc. 1 ¶ 1, Doc. 1-1, Doc. 1-2; *see Telesca v. SAS Inst. Inc.*, 133 N.C. App. 653, 655, 516 S.E.2d 397, 399 (1999). Ms. Smith served the original summons and order on UNC/HCS on or about November 5, 2019, *see* Doc. 1 at ¶ 2, Doc. 10 at ¶ 4, and there is no contention that this service did not comply with North Carolina Rules 3 and 4. Ms. Smith then filed her complaint within 20 days, as required by N.C. Rule 3, so the action did not abate. *Hasty v. Carpenter*, 40 N.C. App. 261, 263, 252 S.E.2d 274, 276 (1979).

North Carolina law does not require service of the complaint within any particular time, *Lusk v. Crawford Paint Co.*, 106 N.C. App. 292, 297, 416 S.E.2d 207, 210 (1992), and Ms. Smith did not immediately serve the complaint on UNC/HCS. She did not obtain another summons until January 16, 2020, when she obtained an alias and pluries summons. Doc. 10 at ¶ 6; Doc. 15-1.

Alias and pluries summonses "keep the action alive until service can be made" if a plaintiff has failed to timely serve the original summons. *Roshelli v. Sperry*, 57 N.C.

3

App. 305, 307, 291 S.E.2d 355, 356 (1982). Like the original summons, the alias or pluries summons must be served within 30 days of its issuance. *Hollowell v. Carlisle*, 115 N.C. App. 364, 366, 444 S.E.2d 681, 682 (1994); *see, e.g.*, *Dozier v. Crandall*, 105 N.C. App. 74, 75–76, 411 S.E.2d 635, 636 (1992) ("A summons not served within 30 days loses its vitality and becomes *functus officio,* and service obtained thereafter does not confer jurisdiction on the trial court over the defendant."). Alias and pluries summonses must be issued within 90 days of the last preceding summons or the action is considered discontinued as to any defendant not served. *Dozier*, 105 N.C. App. at 78, 411 S.E.2d at 638. A "discontinued" lawsuit is "treated as if it had never been filed." *Id.*

On January 17, 2020, the day after Ms. Smith obtained the alias and pluries summons, UNC/HCS removed the case to this court. *See* Doc. 1. Ms. Smith did not serve the complaint or the alias and pluries summons on UNC/HCS until September 25, 2020, *see* Doc. 10 at ¶¶ 8–9. She never obtained a summons from this court, and the summons that she served with the complaint in September 2020 was the January alias and pluries summons. That summons had expired on or about April 16, 2020, 90 days after its issuance. N.C. R. Civ. P. 4(d)(2).

UNC/HCS contends that Rule 4(a) of the North Carolina Rules of Civil Procedure required Ms. Smith to obtain a summons within five days of filing the complaint, which she admittedly did not do. UNC/HCS also contends that even if the alias and pluries summons issued in January 2020 was valid, it expired long before it was served on UNC/HCS. As a result of either of these failures, UNC/HCS contends that service was insufficient to obtain personal jurisdiction over UNC/HCS. *See* Doc. 15 at 15–18.

4

It is the summons and service of the summons that "constitutes the exercise of the power of the State to bring the defendant before the court," *see, e.g.*, *Kleinfeldt v. Shoney's of Charlotte, Inc.*, 257 N.C. 791, 794, 127 S.E.2d 573, 575 (1962); *Childress v. Forsyth Cnty. Hosp. Auth., Inc.*, 70 N.C. App. 281, 285, 319 S.E.2d 329, 332 (1984), as UNC/HCS recognizes. But UNC/HCS overlooks the key fact that Ms. Smith served it with a valid summons, very shortly after Ms. Smith obtained the order extending the time to file her complaint. As required by Rule 3, Ms. Smith served a summons and the order extending time on UNC/HCS, and as required by Rule 3, she filed her complaint within the allotted time. N.C. R. Civ. P. 3(a). Nothing else appearing, the state court action was alive and well at the time the action was removed.

UNC/HCS points to Rule 4(a) of the North Carolina Rules of Civil Procedure, which provides that, "[u]pon the filing of the complaint, summons shall be issued forthwith, and in any event within five days." N.C. R. Civ. P. 4(a). The five-day deadline is not explicitly limited to actions commenced by the filing of a complaint, but nor does it explicitly apply to cases commenced by the issuance of a summons under N.C. Rule 3. The question, as it arises here, is whether under North Carolina law a plaintiff must serve a defendant with a second summons after she has properly served the defendant with the first summons. For several reasons, the Court concludes that if a plaintiff properly serves the defendant with the summons and order extending time in a manner authorized by N.C. Rules 3 and 4, then the plaintiff need not obtain and serve another summons after she files her complaint.

First, the cases make clear that service of the summons is the key to obtaining personal jurisdiction over the defendant. *See, e.g.*, *Maready*, 311 N.C. at 541, 319 S.E.2d at 916 (noting that where an action is commenced by the issuance of a summons, sufficiency of process and service "involve the summonses and not the complaint"). Here, Ms. Smith properly served the October 23, 2019, summons on UNC/HCS. Doc. 10 at ¶ 4. And she took the next step explicitly required by the statute to maintain her lawsuit: she filed a complaint within 20 days. *Id.* at ¶ 5. If the rules required the service of two summonses, one would think the rules would impose that unusual requirement directly, and they do not.

Second, "[t]he five-day period [in N.C. Rule 4] was inserted to mark the outer limits of tolerance in respect to delay in issuing the summons." *Stinchcomb*, 211 N.C. App. at 561, 710 S.E.2d at 324 (cleaned up). Here, the action is commenced by the issuance of a summons, so there is no need "to mark the outer limits" to avoid delay in obtaining a summons; a summons has already been obtained and served.

Third, the North Carolina Supreme Court's decision in *Braswell v. Atlantic Coast Line R.R. Co.*, 233 N.C. 640, 65 S.E.2d 226 (1951), is instructive and suggests that N.C. Rule 4(a) does not apply to actions commenced under N.C. Rule 3. The action in *Braswell* was commenced under N.C. Gen. Stat. § 1-121, the nearly identical predecessor to Rule 3, in relevant part.[3] *See Hasty*, 40 N.C. App. at 263, 252 S.E.2d at 276 ("[T]he

---

[3] *See* N.C. Gen. Stat. § 1-121 (1961) (providing that "the clerk may at the time of the issuance of summons on application of plaintiff by written order extend the time for filing complaint to a day certain not to exceed twenty (20) days, and a copy of such order shall be

6

procedure for serving a summons with an order allowing a delay in filing the complaint is very similar under both the rule and the statute."). The only summons issued in that case was issued alongside the order extending time to file the complaint. *Braswell*, 233 N.C. at 640–41, 65 S.E.2d at 226–27 (noting the summons was issued on November 16, 1950, and the complaint was filed on December 5, 1950). In response to the defendant's motions to dismiss, the court closely analyzed and described clearly the requirements for process and service of process in this context, and it said nothing about the need for a second summons to issue after the complaint was filed. *See generally id.*

In *Braswell*, the plaintiff properly served the defendant with the summons and the order extending time to file and timely filed the complaint but did not serve the defendant with a copy of the complaint within ten days of its filing, as required under the statute.[4] *Id.* at 640–41, 65 S.E.2d at 226. The defendant moved to dismiss for insufficient service of process after ten days had elapsed, and before the complaint was served. The North Carolina Supreme Court reversed the trial court's order dismissing the case, and held that the plaintiff's only "penalty" for failing to timely serve the complaint "is that his adversary is not compelled to plead" until the complaint is served. *Id.* at 642, 65 S.E.2d at 228. The court clarified that, "[w]here the defendant has been duly served with summons together with a copy of the order extending the time for filing complaint, and

---

delivered to the defendant, or defendants, at the time of the service of summons in lieu of a copy of the complaint.").

[4] Today, the North Carolina Rules of Civil Procedure do not "contain a stated requirement as to the time within which a complaint must be served." *Lusk*, 106 N.C. App. at 297, 416 S.E.2d at 210.

7

within the time the complaint is properly filed with copy, the defendant is in court and the plaintiff's cause may not be summarily dismissed for lack of service of process." *Id.*, 65 S.E.2d at 227; *Hasty*, 40 N.C. App. at 263, 252 S.E.2d at 276 ("Rule 3 has not overruled *Braswell*.").

UNC/HCS was "duly served with summons together with a copy of the order extending the time for filing complaint" and Ms. Smith timely filed her complaint. *Braswell*, 233 N.C. at 642, 65 S.E.2d at 227. There is nothing to suggest that the October 23, 2019, summons or order were defective; process was thus sufficient under North Carolina law. Moreover, Ms. Smith completed service of process under state law before UNC/HCS removed to this Court, as North Carolina courts have held that "the service of the complaint is not part of 'the chain of process' contemplated by Rule 4." *Lusk*, 106 N.C. App. at 297, 416 S.E.2d at 210.

It is not completely clear how Federal Rule of Civil Procedure 4(m) interacts with the state court rules after a case is removed on these particular facts. That rule requires a defendant to be served within 90 days after the complaint is filed, Fed. R. Civ. P. 4(m), so arguably Ms. Smith should have served the complaint on UNC/HCS within 90 days after removal. Assuming without deciding that this is so,[5] UNC/HCS waived this defense by not raising it in its motion to dismiss. "[W]hen a defendant waives his insufficiency of

---

[5] It is unclear whether Rule 4(m) applies where, as here, the defendant was served with process according to state law before removal. *See Randolph v. Hendry*, 50 F. Supp. 2d 572, 579 (S.D.W. Va. 1999) ("*When no defendant has been served*, in an action removed to federal court from state court, Rule 4(m) of the Federal Rules of Civil Procedure requires the plaintiff to serve the summons and complaint upon the defendant within 120 days from filing of the Notice of Removal in the federal court.") (emphasis added).

service defense, the Court lacks authority to dismiss for failure to comply with Rule 4(m)." *Tate v. Smith*, 1:14CV125, 2016 WL 4444856, at *3 (M.D.N.C. Aug. 23, 2016) (citing *Pusey v. Dallas Corp.*, 938 F.2d 498 (4th Cir. 1991)).

For all of these reasons, and because UNC/HCS has since been served with the complaint and has not offered any argument to suggest that it was prejudiced by this delay, the Court declines to dismiss this matter pursuant to Fed. R. Civ. P. 4(m) or 12(b)(1), (b)(2), or (b)(4).

## II.     Ms. Smith's Claims are not Barred by Sovereign Immunity

Sovereign immunity bars federal jurisdiction over suits against nonconsenting states, state agencies or departments, and cases where those entities are the "real, substantial party in interest," even if not captioned as a party. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). (citation omitted). UNC/HCS is an agency of the State of North Carolina created by statute, *see* N.C. Gen. Stat. § 116-37(a)(1), and therefore it is entitled to Eleventh Amendment immunity when it otherwise applies. *See Thomas v. North Carolina*, No. 3:12-CV-00038-FDW-DCK, 2013 WL 566481, at *7 (W.D.N.C. Feb. 13, 2013). "An immunity defense for damages claims is unavailable if: (1) Congress has abrogated a state's immunity pursuant to its powers under the Fourteenth Amendment; or (2) a state has waived its immunity by consenting to suit in federal court." *Johnson v. N.C. Dep't of Health & Hum. Servs.*, 454 F. Supp. 2d 467, 471 (M.D.N.C. 2006).

UNC/HCS acknowledges that Congress has abrogated Eleventh Amendment immunity for Title VII claims, *see Savage v. Maryland*, 896 F.3d 260, 275 (4th Cir.

2018), and that North Carolina has waived its sovereign immunity for FMLA claims. *See* N.C. Gen. Stat. § 143-300.35(a)(3). But it contends that Ms. Smith's claims are nonetheless subject to dismissal on sovereign immunity grounds because Ms. Smith did not affirmatively plead that sovereign immunity has been abrogated. This Court and at least one other court in this district have rejected this precise argument. *See Brown v. Univ. of N.C. Health Care Sys.*, No. 1:20-CV-0086, 2021 WL 512222, at (M.D.N.C. Feb. 11, 2021); *see James v. Univ. of N.C. Health Care Sys.*, Case No. 1:18-CV-339, M.D.N.C., Doc. 37. For the persuasive reasons stated in those decisions, and because UNC/HCS has not identified any new cases in support of its argument, the Court will deny the motion to dismiss the complaint to the extent it is based on Ms. Smith's failure to plead waiver of sovereign immunity.

### III. Ms. Smith Has not Plausibly Alleged a Title VII claim

In her complaint, Ms. Smith asserted three Title VII discrimination claims: disparate treatment, hostile work environment, and retaliation. Ms. Smith has abandoned her hostile workplace and retaliation claims, as she did not respond to UNC/HCS's arguments challenging the sufficiency of those allegations. *Sawyers v. United Parcel Serv., Inc.*, No. 1:18-CV-1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) ("This district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim.").

#### A. Facts as Alleged in the Complaint as to Disparate Treatment

Ms. Smith, an African-American woman, worked for UNC/HCS from April 2010 through August 2019, when she was terminated. *See* Doc. 3 at ¶¶ 6, 42, 44, 49. Her

10

"issues within management" began in January 2018, when Robert Chalifour assumed the role of the clinic director. *Id.* at ¶¶ 12–13. Up to that point, Ms. Smith had not received any disciplinary sanctions. *Id.* at ¶ 10. In February 2018, Mr. Chalifour sanctioned Ms. Smith for violating a clinic policy even though managers had not been trained on the policy. *Id.* at ¶ 21. Several weeks later, a training on the relevant policy was held. *Id.* at ¶¶ 22–23.

Ms. Smith took her first of two FMLA leaves from November 26, 2018, through January 28, 2019. *Id.* at ¶ 14. On November 28, 2018, Mr. Chalifour issued a disciplinary action based on Ms. Smith's "tone" during a meeting in which Ms. Smith "express[ed] her grievances" to him. *Id.* at ¶ 35. While Ms. Smith was on leave, Mr. Chalifour "brought in several white females who were unable to perform [her] job correctly" and emailed Ms. Smith to ask her to perform tasks. *Id.* at ¶¶ 15–16.

When Ms. Smith returned from leave, she was subjected to "extreme scrutiny" in how she performed her job. *Id.* at ¶ 24. Five days after Ms. Smith returned, Mr. Chalifour issued Ms. Smith a third disciplinary action and "final warning" for leaving her password on her desk. *Id.* at ¶ 37. Ms. Smith did not write the note containing the password, which was incorrect, *id.* at ¶ 40, and Mr. Chalifour knew that Ms. Smith's co-worker used the password while she was on leave. *Id.* at ¶ 41. Ms. Smith was "uninvited" to a meeting "held for all managers and directors" where "information was given about new changes" that Ms. Smith was required to circulate to staff. *Id.* at ¶ 28.

On August 6, 2019, Mr. Chalifour issued Ms. Smith a "pre-dismissal" letter and told her to return her keys and leave the building; this was the day before Ms. Smith was

scheduled to begin her second FMLA leave. *Id.* at ¶¶ 45–46. UNC/HCS terminated Ms. Smith's employment on August 9, 2019. *Id.* at ¶ 49.

### B. Analysis

To survive a motion to dismiss, a plaintiff asserting a Title VII discrimination claim must allege facts that establish a plausible basis for the claim of discrimination. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010). Ultimately, a plaintiff can show that an adverse employment action was the product of discrimination either by producing direct evidence of discrimination or, where there is no direct evidence, using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to raise an inference of discrimination. *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 780 (D. Md. 2010); *Janey v. N. Hess Sons, Inc.,* 268 F. Supp. 2d 616, 620–21 (D. Md. 2003) (citing *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1227 (4th Cir. 1998)). "Direct evidence is evidence of conduct or statements that reflect directly the alleged discriminatory attitude that bears directly on the contested employment decision." *McLaughlin v. CSX Transp., Inc.*, 211 F. Supp. 3d 770, 779 (D.S.C. 2016) (citation omitted).

Here, Ms. Smith appears to contend that Mr. Chalifour used the word "tone" as a racially charged code word and that this allegation is sufficient to directly show a racially discriminatory motive. *See* Doc. 17 at 16. She cites no case that supports her argument. In an unpublished decision, the Fourth Circuit has noted that, generally speaking, "[f]acially race-neutral statements, without more, do not demonstrate racial animus on the part of the speaker." *Martin v. Brondum*, 535 F. App'x 242, 244 (4th Cir. 2013) (citation

12

omitted). At least one district court in the circuit has agreed. *Betof v. Suburban Hosp., Inc.*, Civ. A. No. DKC 11-1452, 2012 WL 2564781, at *6 (D. Md. June 29, 2012).

"Tone" is a facially race-neutral word, and the complaint is devoid of any other concrete allegations of discriminatory acts or motives, devoid of any allegations establishing a context in which the disciplinary action based on her "tone" would be understood as discriminatory, and devoid of any factual allegations indicating Mr. Chalifour used the word in a discriminatory manner. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).[6]

By itself, use of the word "tone" as described in the complaint is not the kind of direct evidence sufficient to support a claim that her termination was the product of discrimination. *See Betof*, 2012 WL 2564781, at *6 (noting at summary judgment that inferences of discrimination arising from the use of facially race-neutral statements "necessarily implicate the *McDonnell Douglas* burden-shifting scheme and cannot serve as direct evidence") (cleaned up); *Lloyd v. Holder*, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *10 (S.D.N.Y. Dec. 17, 2013) (holding at summary judgment that a supervisor's use of the words "inarticulate" and "entitled" about the plaintiff, an African-American woman, were insufficient, without more, to show discriminatory intent);

---

[6] In *Ash v. Tyson Foods, Inc.*, the Supreme Court reversed a court of appeals ruling that the word "boy" when referring to a black man was not evidence of discriminatory animus. 546 U.S. at 456. The Supreme Court found that the court of appeals had erred in finding that the word "boy," when standing alone and without being modified by a racial classification such as "black" or "white," was always benign and could never be discriminatory. *Id.* The Court observed that the word "boy" was potentially probative of discriminatory animus and that "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Id.*

13

*McLaughlin*, 211 F. Supp. 3d at 779 (stating at summary judgment that "[t]he kind of statements that suffice to show direct evidence of discrimination are those comments that do not require 'inference or presumption'").

Nor is Ms. Smith's allegation that her supervisor criticized her "tone" sufficient to make her claim of racial discrimination plausible for Rule 12(b)(6) purposes. As the Fourth Circuit has persuasively indicated in an unpublished case, "racially charged code words may provide evidence of discriminatory intent by sending a clear message and carrying the distinct tone of racial motivations and implications." *Martin*, 535 F. App'x at 244 (cleaned up). But the allegations here do not begin to show that "clear message" or "distinct tone" of racial motivation.

This is not a case like, for example, *Redmon v. Flexsol Packaging Corp.*, where the complaint survived initial scrutiny because of its allegations of "acts of favoritism" towards other employees outside of the protected class combined with allegations that plaintiff was terminated just four months after his supervisor used the racially-charged term "boy" towards him in an offensive tone of voice and failed to apologize. No. 5:19-CV-00124-KDB-DSC, 2020 WL 967619, at *5 (W.D.N.C. Feb. 27, 2020), *report and recommendation adopted,* No. 5:19-CV-00124-KDB-DSC, 2020 WL 1244240 (W.D.N.C. Mar. 13, 2020). It is more like *Humphries v. City Univ. of N.Y.*, where the court dismissed the plaintiff's discrimination claims on a Rule 12(b)(6) motion because the plaintiff's "subjective interpretation" of her coworkers' use of "'critical but facially non-discriminatory terms' does not, itself, reveal discriminatory animus." No. 13 Civ.

14

2641 (PAE), 2013 WL 6196561, at *9 (S.D.N.Y. Nov. 26, 2013). Ms. Smith has not plausibly alleged that there is any direct evidence of discrimination.

In the alternative, Ms. Smith also relies on the *McDonnell Douglas* burden-shifting framework. While the pleadings need not "contain specific facts establishing a prima facie case of discrimination" under the *McDonnell Douglas* framework, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), mere conclusions are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The elements of a prima facie case of discrimination under *McDonnell Douglas* are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. There is no dispute that Ms. Smith, an African-American woman, is a member of a protected class, and that termination is an adverse employment action. *See Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010). For purposes of this motion, UNC/HCS has not disputed that she was performing her job satisfactorily, and she alleges several facts which provide circumstantial support that she performed satisfactorily.

But Ms. Smith has not alleged any facts indicating that Mr. Chalifour or anyone at UNC/HCS treated Ms. Smith differently from similarly situated employees outside her protected class. Indeed, she acknowledges that she "did not allege that her white co-workers were treated better." Doc. 17 at 15 (cleaned up).

Ms. Smith contends that the Court can reasonably infer that her incompetent white coworkers, Doc. 3 at ¶¶ 15–16, were not reprimanded and thus that she was treated

15

differently.  *See* Doc. 17 at 15–16.  But this would require the Court to "speculate" and "fill in the gaps" in the complaint.  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied,* No. 20-759, 2021 WL 666419 (U.S. Feb. 22, 2021).

First, Ms. Smith did not allege that Mr. Chalifour and UNC/HCS did not discipline her white coworkers.  And the alleged quality of their work says nothing about the way they were treated by UNC/HCS as a result of their performance.  *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (noting that courts need not accept "unwarranted inferences" as true).

Second, even if the Court inferred Ms. Smith's white coworkers were not disciplined, the allegations of differential treatment in the complaint are conclusory—in sum, the complaint alleges Ms. Smith was disciplined for violating rules, but her white peers were not.  Such "vague claims of differing treatment," unsupported by specific facts as to how or when her coworkers were treated differently are insufficient to demonstrate disparate treatment based on race.  *Jackson v. Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001); *see Woods v. Wash. Metro. Area Transit Auth.*, No. PWG-18-3494, 2019 WL 3766508, at *5 (D. Md. Aug. 9, 2019), *aff'd sub nom.*, 785 F. App'x 188 (4th Cir. 2019); *see also Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 863 (D. Md. 2004) (collecting cases).

Ms. Smith does not have to prove her case in her complaint, and she does not have to allege all the facts needed to ultimately prevail.  But her claim of racial discrimination must be plausible, and she must include some specific allegations beyond the facts that she is a member of a protected class, did her work, and was terminated; her own

16

suspicions and conclusions about her employer's motives are insufficient, standing alone. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Iqbal*, 556 U.S. at 679 (holding that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed).[7]

While Ms. Smith has set out a "sufficiently detailed account of [her] difficulties" with Mr. Chalifour and UNC/HCS, she "has not pled any facts which link those difficulties with racial discrimination." *Deberry v. Davis*, No. 1:08CV582, 2010 WL 1610430, at *6 (M.D.N.C. Apr. 19, 2010) (citation omitted). As such, the Title VII cause of action will be dismissed for failure to state a claim.

### IV. FMLA Claim

In its reply brief and in response to some of Ms. Smith's arguments, UNC/HCS contends that Ms. Smith has failed to state a claim under FMLA. Doc. 19 at 7–12. This argument was not raised in the initial brief in support of the motion to dismiss. Doc. 15. After review of the FMLA claim, the Court declines to address this argument.

### Conclusion

The Court has jurisdiction over UNC/HCS because it was served with process according to North Carolina law before UNC/HCS removed the case to this court, and it

---

[7] To the extent the plaintiff relies on the test in *Conley v. Gibson*, 355 US 41, 45–46 (1957), cited by the plaintiff at Doc. 17 at 10–11, the Court notes that the Supreme Court has disavowed the "no set of facts" test. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (noting that "this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

17

waived any defects under Federal Rule of Civil Procedure 4(m). The Court will dismiss Ms. Smith's state law cause of action for wrongful termination without prejudice, per her request, *see supra* note 1, and her cause of action under Title VII is dismissed for failure to state a claim. Ms. Smith's cause of action under the FMLA is not barred by sovereign immunity and may proceed.

It is **ORDERED** that the defendant's motion to dismiss, Doc. 14, is **GRANTED in part** and **DENIED in part** as follows:

1. UNC/HCS's motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), or (b)(4) is **DENIED.**

2. UNC/HCS's motion to dismiss all claims based on sovereign immunity is **DENIED**.

3. UNC/HCS's motion to dismiss the plaintiff's claims for racial discrimination under Title VII is **GRANTED** and the Title VII claims are **DISMISSED** for failure to state a claim.

4. Plaintiff's claims for wrongful termination under N.C. Gen. Stat. § 143-422.2, are **DISMISSED WITHOUT PREJUDICE**.

5. The claim for the alleged violations under the FMLA will proceed.

This the 25th day of March, 2021.

_____
UNITED STATES DISTRICT JUDGE

18

Case 1:20-cv-00052-CCE-LPA   Document 21   Filed 03/25/21   Page 18 of 18